Welcome back. I'll call the fourth case this morning, Anthony Smith v. City of Janesville. Mr. Richards, you may proceed. Yes, thank you, Your Honors. My name is Stephen Richards, and I represent Anthony Smith and A.J.'s Flying Towing. Your Honors, this was a case which was on the eve of a trial. There was a grant of summary judgment by the District Court on all the claims. There were three major claims, although two of them are contained within the same count of the complaint. The first claim is that the defendants delayed placing A.J. on a no-preference tow list for racially discriminatory reasons. The second is that they suspended A.J.'s from the tow list for racially discriminatory reasons. And the third is that they discriminated against A.J.'s because of A.J.'s complaints of racial discrimination. Now, this is a review of de novo, but it should be noted that the District Court did acknowledge the proper standard, which is that we can use either circumstantial or direct evidence to establish a mosaic, which would lead a reasonable jury to conclude that there was discriminatory racial animus motivating these decisions. I think the major problem with the District Court's opinion is that it lost the forest for the trees. Each individual tree was examined, but the forest was lost. And the forest obviously is composed of these individual incidents. First of all, there was, as to the tow list, there was no contest that the tow list was posted. There was a deadline posted eight days before the deadline for no discernible reason. The defendants closed the list and said they had enough companies. And therefore, when flying A.J.'s applied before the deadline, but after the closure, the initial the initial explanation was they had enough companies. Anthony Smith, the principal flying A.J.'s, who had a long history of complaining about racial discrimination in these matters, including public statements and events in which one of the defendants was involved, then complained that this was discriminatory. After he made the complaint, he then was considered for the tow list. An examination was done of his premises. But at the time he was placed on the tow list, he was told by one of the defendants explicitly, we'll put you on the tow list, but no more complaints of racial discrimination. Richard, if I could interrupt for a moment. You said that the municipality closed the list. I thought the applications were still open. I don't know. No, that is confusing, Your Honor. What happened was there is a deadline of the 23rd. Initially, the action of the defendants was to say that they had four applications. They liked eight days before the closure, before the deadline. They accepted all four of those. And then they said when A.J.'s applied, they said you're on a waiting list because we have enough already. So there is no explanation. And the district court noted that he could find no good explanation for this pattern of behavior. No explanation as to why they hadn't waited until the deadline to finalize the list, why they had closed the list before the deadline. That's not the material point. The material point, you're challenging the delay. So what evidence is there of discriminatory animus when your client's application, which everybody agrees was submitted before the expiration of the deadline? But it was placed on file and wasn't acted on until he complained. But then it was acted on that very day and he was included in the list. As I understand the chronology here, what evidence is there of racial animus for the slight delay when your client's application was was put on file as opposed to acted on immediately? Well, first of all, there is unrebutted evidence that Holford had first referenced previous complaints against A.J., but then said that those weren't the reasons. He said that they didn't have a staff office. They didn't have a staff office in Janesville, which turned out not to be true. And then he only allowed A.J.'s to be on the list after he had told Anthony Smith, you know, no complaints about racial discrimination. OK. And Anthony Smith to decide, OK, I'm not going to say I'm going to complain about it. I want to be on the list. So I think that I think the delay is supported by the evidence. A reasonable jury conclude there is delay and moreover, a reasonable jury could use the same evidence to conclude that the later suspension from the list was racially motivated or and or motivated by the fact that Mr. Smith is not hesitant to assert his rights and to and to complain about racial discrimination when he sees it. It's a different claim, as I understand it. There's a delay claim and there's a suspension claim. And I don't see any evidence of discriminatory animus attribute that is behind the delay. The only thing you cited was the comment by Holford, no complaints about racial discrimination. But your client, that was the same day that your client's application was approved and was placed on the list. So there can't really be any. I mean, a better way to characterize it might be your honor might be instead of characterizing as delay. And again, both of these complaints are both of the incidents are included included in the same account. Better than character, better than characterizing as delay. Another way may be to characterize it. It was conditional admission to the list so long as he didn't complain about racial discrimination. And I can't understand how you could hold that that's okay. I mean, would a, you know, if every if every time you know you have a list or a government preference. There was no condition placed on your client's activities. He was approved and placed on the list approved for towing jobs and placed on the total list unconditionally. I don't think so. I think there are all conditions placed on the use of his services. Well, the condition was, as Holford said, no, don't complain about racial discrimination. I think that's why he wasn't yet approved. Right. Yeah, but I think I think you're that's splitting hairs, basically. I mean, he was giving a clear message that he could be on the list as long as number one, he wasn't complaining about discrimination about not being put on the list to that. He was not going to be complaining about discrimination. Discrimination can also happen if you're on the list, but you're not given the same opportunities as other people on the list or you're suspended on the list from four. And as he was for an incident, which was really very unremarkable and much less egregious than that, which involved Don's company, a white owned company. So. Looking at the whole picture together, as the court should have done, there is evidence of racial animus and racial discrimination. And one another piece of evidence, which the district court itself noted was. The district court said that the explanation for Holford's decision to place flying ages application on file is, quote, not particularly satisfying. They it's there's no explanation as to why there was for the quiz was closed, why Holford thought that they didn't need a fifth one. And then after he decided that ages could come on, he then took another white owned company on to have six instead of four. I mean, the whole sequence of events. They don't all practice smells to high heaven. Mr. Mr. Richards, at the time they decided to stop at four. Was there any indication that flying ages was going to apply? None of the six applicant was going to apply. There is no evidence of that in the record one way or another. But again, the application period normally, I think when you hold you, when you set an application deadline is X. It means that people can apply till X. Then we consider. I mean, I think it's very strange in any organization to set a deadline of X. You get four applicants and you say, OK, forget it. Nobody else need apply. And that's exactly what happened initially until Mr. Smith complained reasonably about racial discrimination being placed on the total list. Well, I know you want to us to look at this more holistically than you think the district judge did. But even assuming the concerns you have about the initial application process. What would that indicate? How did that indicate anything with regard to the removal decision? Well, it's circumstantial evidence that the removal decision was racially motivated. We have a pretty strong fact pattern here. Do we not? It would indicate contraindicate that. I mean, there there. No, it's not a strong fact pattern. And I think it's contested. And I think at a jury trial, we win because they investigated thoroughly an incident in which no one was complaining. The driver who was towed was not complaining. She had no problem. But they initiated an investigation as to whether she was given a ride, which is not part of any policy or rule. Then there was an investigation as to whether a GPS was missing. There is no evidence that anybody at A.J.'s towing had taken the GPS and she couldn't say the GPS was taken. And in an incident where another white owned company charged six hundred dollars for a tow, they were not removed from the total list. I mean, if that is not discrimination, what is? All right. Your time has expired, Mr. Richards. We'll move to Ms. Bainard. Welcome back. Thank you. May it please the court. My name is Jasmine Bainard and I represent the defendant appellees. This court should affirm the district court's decision granting summary judgment. All right. We appear to be having some technical difficulty. We may have lost Ms. Bainard. Yeah, it appears we lost Ms. Bainard. Hold on one second so we can get her. Thank you very much. And Mr. Richards, maybe you can put your. We don't have any interference as we try to retrieve Ms. Bainard. Thank you. All right. You're back, but you're still on mute. OK, can you hear me now? So plaintiff raises two issues on appeal. The first is brought as an equal protection violation and alleges that the city discriminated against Smith's Towing Company by one delaying and then removing their list from the list based off their minority status. And the second alleges an unlawful and racially motivated retaliation in violation of 42 USC 1981, which prohibits discrimination in the making or enforcement of contracts on the basis of race generally. As an initial matter, plaintiffs it's our belief that plaintiffs 1981 claim is meritless because we did not unconstitutionally interfere with Smith's ability to make any such contracts. Placement on the city's toll list is not a contractual agreement and Smith is a private business owner. Regardless, accepting that he does have a claim as the district court did intentional discrimination is a required element of both plaintiffs equal protection and 1981 discrimination claims. And they both use as the court noted the same method of proof, which requires the plaintiff to come forward with evidence, either direct or indirect for which a reasonable jury could infer retaliation. This standard already gives Smith the upper hand, according to the court's 2017 decision in Baines v. Walgreen Company. If an employee can assemble from various scraps of circumstantial evidence, enough to allow the trier fact to conclude that it's more likely than not discrimination motivated and adverse employment in action, then summary judgment is not appropriate. But even on this deferential standard, plaintiffs simply cannot succeed to the first claim. So with regards to the equal protection claim, the issue for the court is whether Smith to do sufficient information for which a jury concluded that his company would have been added to the initial list that he had not submitted an application for and not been removed from the list. If he had a different ethnicity and everything else remained the same. The district court concluded that plaintiffs could not do such information and this was not an error. We kind of already discussed the initial application. However, I think it's important to note, and I think it's very disingenuous of plaintiffs to argue that the July 25 complaint wasn't sufficient basis for removing Smith's company from the toll list. And not only the complaint that was made, but Smith's failure to respond to the city's efforts to investigate the complaint. The city set up, you know, reached out to him, they set up time to talk on the phone, they emailed him. Here, plaintiffs have simply not come forward with sufficient evidence to adequately isolate discriminatory animus as the independent variable for the city's actions. The city has explained that the reason why the initial list was set at four people was because they were going to evaluate and add other companies on an as needed basis. By plaintiff's own admission, after Smith is added, KD's Towing, which is a white owned company, is also added. You know, he might not like the reason why the city chose to have four or six tow companies on its no preference list, but that is not enough to infer discrimination. And to the second point, even assuming plaintiffs have an actionable 1981 claim, the evidence does not support, again, a causal link between Smith's protected action, complaining about racial discrimination, and being removed from the no company, the no preference toll list. So to this claim, plaintiff relies on a suspicious timing argument, which the Seventh Circuit has repeatedly held is insufficient alone to withstand summary judgment. And to this claim, plaintiff argues simply that his company is removed from the no preference list on August 29, because he claimed racial discrimination on a June 27, and again on August 8. Now, plaintiff's timing argument is easily diminished by interviewing acts that break this causal chain, and this is where the timeline is important. So Smith makes a complaint on June 27. Two weeks later, on July 12, his company is added to the list. So this breaks any causal chain between the June 27 discrimination and the August 29 removal, and being added to the list after an alleged, you know, protected activity of making a discrimination claim, it cannot be seen as an adverse action. And then again, even more importantly, the July 25 incident and Smith's lack of response. And I know that plaintiffs want to ignore the facts of it, but as a district court noted, the facts of that July 25 incident are undisputed. Smith's company responded to the scene of a crash. They towed a vehicle without speaking to the owner, and later the owner told the police she was unhappy with the tow service, and that her GPS was missing. So, put simply, there's no evidence for which a jury could infer that the city's response to Smith's August 8 complaint was retaliatory, and if anything, it was accommodating. They offered to meet with him in person before rendering a decision about his removal. One more additional point. Plaintiff attempts to keep both their retaliation, equal protection, and a 1981 claim alive by pointing to what they call comparator evidence. Although they cite to absolutely no record evidence, plaintiff says that there's plenty of evidence for which a jury could infer, and then they point to the incident with Don's towing. However, if you actually review the facts, the undisputed facts regarding that incident as the district court did, those Smith's company and Don's company are insufficient comparators to infer improper motive. First, the complaint against Don's company was fundamentally different than the complaints against Smith. However, the city's response and reaction to the complaint against Don's was similar and arguably more strict than its reaction to Smith's. Finally, Smith failed to respond to the city's concerns regarding the complaint made about his company. As noted by the district court, given the undisputed facts surrounding Smith's removal, he can hardly claim surprise, much less unfair discrimination after his company was suspended. In sum, Smith has simply not raised a genuine dispute of material fact concerning his failure to meet the city's legitimate expectations for their tow company. Instead, he speculates and disagrees with who makes and who keeps a spot on the tow list. However, disagreement does not mean the decisions were a result of unlawful discrimination. As such, we respectfully request that this court affirm the decision of the district court. If the court has any questions, we're available. Otherwise, we will rest on our brief. All right. Thank you very much. Mr. Richards, your time has expired, but you may have an additional minute if you have something to say in summary as well. But you are on mute, Mr. Richards. Sorry. I don't I don't mean to beat a dead horse, but just in response to some of those points, what the defendants ignore is that even in the course of the investigation of the incident with legislative suspension, again, Mr. Smith, first of all, did give explanations. It did provide provide that at a certain point. He said enough is enough. And this is racial discrimination. And it was after he complained about racial discrimination again. This was this is additional evidence. He was suspended from the he was suspended from the no preference list. So there's enough for a jury to conclude that as that that to include subjective intent. And as this court has often said, although I think this principle has been ignored, unfortunately, issues of subjective intent and motivation are not very amenable to to being resolved on summary judgment. And this one shouldn't have been this case. You go to trial. Thank you. Thank you very much. Thanks to both counsel. The case is taken under advisement.